**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**CHARLES HOWARD PATTERSON,**

Plaintiff,

v.                                                                    **CIVIL ACTION NO. 5:19-CV-17**
                                                                      Judge Bailey

**WESTFIELD INSURANCE COMPANY,**

Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING RENEWED MOTION FOR SUMMARY JUDGMENT**

Pending before this Court is defendant Westfield Insurance Company's Renewed

Motion for Summary Judgment [Doc. 103]. Plaintiff Charles Patterson filed a Response in

Opposition [Doc. 104], and defendant filed a Reply [Doc. 105]. Having been fully briefed, this

matter is now ripe for adjudication. For the reasons contained herein, this Court will grant the

Motion.

**BACKGROUND**

Defendant, Westfield Insurance Company, is an insurance carrier who issued a

homeowner's insurance policy to plaintiff, Charles Patterson. [Doc. 1-1 at 3]. In September

2017, plaintiff discovered property damage to his home, and reported said property damage

to defendant on September 26, 2017. [Id. at 4]. At the time, plaintiff believed an underlying

factor of the property damage could have potentially been mine subsidence, and plaintiff's

policy included a Mine Subsidence Endorsement. [Id. at 3]. On October 6, 2017, defendant

1

sent plaintiff two pieces of correspondence—the first advising that an adjuster had been assigned to plaintiff's homeowner's claim and the second advising that plaintiff's mine subsidence claim had been submitted to the West Virginia Board of Risk and Insurance Management ("BRIM"). [Id. at 4]. On December 7, 2017, an inspection of plaintiff's property was conducted by defendant through Jerome D. Polick, P.E., of Rudick Forensic Engineering, Inc. [Id.; Doc. 12-1 at 8].

By letter dated January 19, 2018, defendant denied plaintiff's claim for the property damage sustained to his home under plaintiff's homeowner's policy, stating that the damage to plaintiff's home was caused by a number of factors that are excluded from plaintiff's policy, such as earth movement and water damage. [Doc. 12-1 at 1–5]. This denial correspondence stated the following:

> Based on our investigation and the review of the applicable policy language, we must advise you that coverage will not be applicable for your client's loss or damage. . . .
>
> You have previously reported that you and/or your client feel that the damage is the result of underground mine subsidence activity in your area. Your client's policy includes . . . Coal Mine Subsidence Coverage . . . which provides coverage consideration for mine subsidence related damages. Mine subsidence claims are investigated by the West Virginia Department of Administration, Board of Risk and Insurance Management (BRIM). Westfield Insurance Company has notified the West Virginia Board of Risk and Insurance Management of your client's claim for mine subsidence damage. You will be contacted by a representative of WV BRIM if you have not already to coordinate their investigation.

[Id. at 4].

Almost a year later, plaintiff filed this suit on January 11, 2019, claiming that since the January 19, 2018, denial letter was sent, defendant "has made no attempt to further resolve,

investigate or otherwise adjust Plaintiff's claim, including the claims presented under the mine subsidence endorsement of Plaintiff's homeowner's insurance policy." [Doc. 1-1 at 5]. Plaintiff's suit alleges that defendant's denial of plaintiff's claim constitutes a breach of contract, and also alleges that defendant violated the West Virginia Unfair Trade Practices Act, West Virginia Code § 33-11-1 *et seq.*, and the corresponding Insurance Commissioner's Regulations, as well as the implied covenant of good faith and fair dealing. [Id. at 5–9]. Plaintiff states that the "basis for the allegations against [defendant] stem not only from the denial of Plaintiff's claim under his homeowner's insurance policy and [defendant's] conduct in the handling of the claim brought under the policy, but also, [defendant's] conduct as it relates to the mine subsidence claim of the Plaintiff." [Doc. 15 at 3]. Specifically, plaintiff's Complaint states the following, in pertinent part:

(14) [Defendant] has an obligation to conduct a reasonable investigation of all claims arising under insurance policies, including all applicable endorsements.

(15) [Defendant] has an obligation under its contract of insurance with the Plaintiff to conduct a reasonable investigation of any and all claims before refusing to pay the claims.

(16) [Defendant's] denial of the Plaintiff's claim constitutes a breach of contract.

(17) The Plaintiff made a timely claim under his homeowner's insurance policy in regard to the property damage sustained to his home.

(18) The Plaintiff reasonably expected that the claim he presented would be paid under his homeowner's insurance policy, including, but not limited to, under his mine subsidence endorsement.

(19) Plaintiff has complied with all requirements and policy provisions outlined in the subject policy issued by [defendant].

(20) [Defendant] has failed to date to issue any decision as to coverage under

3

the Plaintiff's mine subsidence endorsement even though an inspection was completed of the property by an engineer months ago.

(21) [Defendant] has either failed to obtain the results of the inspection set forth in paragraph 20 above or if it did obtain the results, it has not provided them to the Plaintiff in a reasonable and timely manner.

[Doc. 1-1 at 5–6]. Plaintiff further alleges defendant violated § 33-11-4(9) of the West Virginia

Unfair Trade Practices Act by:

(a) misrepresenting pertinent facts or insurance policy provisions relating to coverages and issues;

(b) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policy;

(c) failing to adopt and implement reasonable standards for the prompt and proper investigation of claims arising under insurance policies;

(d) refusing to pay the claims of [plaintiff] without conducting a reasonable investigation into his claims;

(e) failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) compelling [plaintiff] to file a civil action against Defendant to recover amounts due and owing to him under Policy No. OFH 2801222; and

(h) failing to promptly provide a reasonable explanation for the basis in the insurance policy in relation to the facts or applicable law for denial of the claim.

[Id. at 7].

On July 12, 2019, defendant filed a Motion for Judgment on the Pleadings or, in the

Alternative, to Certify Question [Doc. 12]. After being fully briefed, this Court denied that

Motion under the standard of review prescribed by Fed. R. Civ. P. 12(c). *See* [Doc. 24].

4

On January 31, 2020, defendant filed a Motion for Summary Judgment [Doc. 87]. After being fully briefed, this Court denied the Motion, without prejudice, in light of anticipated new evidence in the form of a report regarding BRIM's re-evaluation of plaintiff's mine subsidence claim.  *See* [Doc. 96].

On November 12, 2020, following the production of the aforementioned re-evaluation, defendant filed the instant Renewed Motion for Summary Judgment [Doc. 103] and accompanying Memorandum in Support [Doc. 102].  Therein, defendant argues that it is entitled to summary judgment because there is no evidence that any portion of the insurance policy at issue other than the Mine Subsidence Endorsement could provide coverage for plaintiff's alleged damages and because plaintiff's mine subsidence claims were investigated and denied by BRIM.  [Doc. 102 at 1].  More specifically, defendant asserts that because West Virginia law mandates that all mine subsidence claim investigations and decisions are statutorily required to be conducted and issued by BRIM, defendant did not breach its insurance contract with plaintiff.  [Doc. 102 at 13–14].

Further, defendant argues that it is entitled to summary judgment with respect to plaintiff's common law bad faith claim because, according to defendant, in the absence of a contractual obligation to pay a claim, there can be no common law or statutory cause of action for bad faith.  [Id. at 19].  Defendant also moves for summary judgment with respect to plaintiff's claim that it violated West Virginia Unfair Trade Practices Act, arguing that the evidence demonstrates that defendant properly handled plaintiff's claim, timely responded to all communications, and repeatedly advised plaintiff and his counsel as to the status of the pending claim.  [Id. at 20].  Finally, defendant argues that it is entitled to summary judgment

with respect to plaintiff's claim for punitive damages because plaintiff has failed to demonstrate the requisite showing of "actual malice" to recover punitive damages. [Id. at 23].

In his Response, plaintiff first argues that defendant's failure to pay under the mine subsidence endorsement constitutes a valid breach of contract claim because plaintiff's privity of contract under the subject insurance policy lies with defendant rather than BRIM. [Doc. 104 at 9–10]. Noting a disparity between expert reports concerning the cause of plaintiff's alleged damages to the subject home, plaintiff asserts that summary judgment with respect to the breach of contract claim is not warranted as the issue of the breach of contract should be determined by a jury that is free to determine the credibility of the experts involved in the matter.  [Id. at 12].

Moreover, plaintiff asserts that because the breach of contract claim is proper, plaintiff has brought a cognizable claim for bad faith based on defendant's alleged refusal to investigate the insurance claim, failure to address whether the insurance claim was covered, and the overall improper claims handling. [Id. at 15–16]. According to plaintiff, these claims handling inadequacies also rise to the level of a violation of West Virginia's Unfair Trade Practices Act.  [Id. at 19–21].

In its Reply, defendant again asserts that it is entitled to summary judgment because while it can decide whether to pay claims for various damages under the language of the subject policy, the decision to pay or deny a mine subsidence claims rests exclusively with BRIM. [Doc. 1-5 at 2]. According to defendant, all claims arising under the Mine Subsidence Endorsement of the subject policy are investigated by BRIM, and BRIM has the sole and exclusive authority to decide whether to pay or deny such claims.  [Id.]. As such, defendant

contends that it cannot be held liable for BRIM's decision to deny plaintiff's mine subsidence claim. [Id.]. This Court will address the parties' arguments in turn under the following standard of review.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.

## <u>DISCUSSION</u>

Upon consideration, this Court agrees with defendant in that it is entitled to summary judgment as a matter as a matter of law with respect to each of plaintiff's claims.

## I.   Breach of Contract

To succeed on a claim for breach of contract, a party must prove the existence of a contract, a breach or violation of the contract, and damages.  *See Wetzel County Saving and Loan Company v. Stern Bros, Inc.*, 156 W.Va. 693, 698, 195 S.E.2d 732, 736 (1973). Here, the parties do not dispute the existence of the contract of insurance between them. Instead, plaintiff claims defendant breached the subject contract through an improper handling of the aforementioned mine subsidence claim.  However, defendant asserts that it did not

8

mishandle said claim because it does not have power to approve or deny such claims under West Virginia law because such claims are entirely within the purview of BRIM.

West Virginia Code § 33-30-8 provides:

Beginning October 1, 1982, every insurance policy issued or renewed insuring on a direct basis a structure located in this state shall include, at a separately stated premium, insurance for loss occurring on or after October 1, 1982, caused by mine subsidence unless waived by the insured: A waiver is not required and the coverage may only be provided if requested by the insured in the following counties: Berkeley, Cabell, Calhoun, Hampshire, Hardy, Jackson, Jefferson, Monroe, Morgan, Pendleton, Pleasants, Ritchie, Roane, Wirt, and Wood: The effective date of a new policy or endorsement containing mine subsidence insurance coverage shall be on the thirtieth calendar day after the application date. The premium charged for coverage shall be set by the board. At no time may the deductible be less than $250 nor more than $500; and total insured value reinsured by the board may not exceed $200,000. In no event may the amount of mine subsidence reinsurance exceed the amount of the fire insurance on the structure.

W.Va. Code § 33-30-8. Similarly, W.Va. Code § 33-30-8 directs that mine subsidence claims are ultimately paid by BRIM out of a finite fund set up by the State of West Virginia. The Code instructs that:

All companies authorized to write fire insurance in this state shall enter into a reinsurance agreement with the board in which each insurer agrees to cede to

9

the board one hundred percent, up to $200,000, of any subsidence insurance coverage issued and, in consideration of the ceding commission retained by the insurer, agree to absorb all expenses of the insurer necessary for sale of policies and any administration duties of the mine subsidence insurance program imposed upon it pursuant to the terms of the reinsurance agreement. The board is authorized to undertake adjustment of losses and administer the fund, or it may provide in a reinsurance agreement that the insurer do so. The board shall agree to reimburse the insurer from the fund for all amounts paid policyholders for claims resulting from mine subsidence and shall pay from the fund all costs of administration incurred by the board but an insurer is not required to pay any claim for any loss insured under this article except to the extent that the amount available in the mine subsidence insurance fund, as maintained pursuant to sections four and five of this article, is sufficient to reimburse the insurer for such claim under this section, and without moral obligation.

Id. Thus, West Virginia law mandates that only BRIM investigates and ultimately decides whether or not to pay mine subsidence claims in West Virginia. *See Higginbotham v. Clark*, 189 W.Va. 504, 432 S.E.2d 774 (1993) (finding that in cases of mine subsidence claims the insurer acts merely as an agent of the State and is bound by BRIM's decisions concerning the same).

As such, while defendant is required by statute to include the mine subsidence endorsement in its insurance policies, it has no authority to decide whether or not such claims

10

are paid.  As previously noted by this Court in its Order Denying Westfield Insurance

Company's Motion for Judgment on the Pleadings or, in the Alternative, to Certify Question

[Doc. 24], the aforementioned statutory provisions do not relieve defendant of its obligations

to its insureds.  *See Bettinazzi v. State Farm Fire and Casualty Co.*, 2014 WL 241694

(N.D. W.Va. Jan. 22, 2014) (Stamp, J.).  However, while this Court denied defendant's prior

motion for judgement based solely on consideration of the pleadings, consideration of the

record as a whole demonstrates defendant is entitled to summary judgment with respect to

plaintiff's breach of contract claim.

>  In its February 27, 2019, denial letter, BRIM indicated as follows:

>  As you are aware, Westfield Insurance, your homeowners insurance company, advised us of your claim for damages due, allegedly, to underground coal mine subsidence.

>  Based on our investigation of this claim, including inspections of your property, inspection of the topographical and mining maps, engineering reviews, and a review of the mine subsidence insurance portion of your insurance policy, the West Virginia Board of Risk and Insurance Management has determined that the damage to your home at 9929 National Road, Wheeling, WV, is not the result of collapse of an underground coal mine.

>  The report of our consulting engineer is attached. This is the same report which our adjusters, Irvine and Associates, first forwarded to your attorneys, Bordas and Bordas, on October 11, 2018. Since that time, we have been waiting to see if you or your attorney would present any contrary or additional evidence to dispute the report. A second copy of the report was sent to Bordas and Bordas on January 22, 2019. To date, we have received no response taking issue with our findings.

>  Therefore, your claim is respectfully denied.

*See* [Doc. 101-4].  While defendant sent correspondence updating plaintiff regarding the

status of BRIM's investigation, defendant had no authority whatsoever under the

aforementioned statutes to influence, override, expedite, or reverse BRIM's decisions concerning plaintiff's insurance claim. *See* [Doc. 101-3].

In his Response [Doc. 104], plaintiff relies heavily on this Court's prior decision in its Order Denying Westfield Insurance Company's Motion for Judgment on the Pleadings or, in the Alternative, to Certify Question [Doc. 24] for the proposition that defendant owed plaintiff a continuing obligation under the subject insurance policy despite BRIM's statutorily required involvement and asserts that defendant's failure to pay damages under the mine subsidence endorsement constitutes a valid breach of contract. *See* [Doc. 104 at 8–12].

Despite recognizing defendant's continuing obligation to plaintiff throughout BRIM's investigation, this Court finds that defendant did not breach its insurance contract with plaintiff upon consideration of the record as a whole. Rather, the record demonstrates that (1) plaintiff submitted a claim for mine subsidence damage to defendant; (2) defendant referred the matter to BRIM as it was statutorily required to do so; and (3) BRIM conducted its independent investigation of the matter and determined that the claim would not be paid. Under these circumstances, defendant cannot be found to have breached its contract with plaintiff for an adverse decision rendered exclusively by BRIM as required by applicable statute. As such, defendant is entitled to summary judgment with respect to plaintiff's breach of contract claim.

## II.   Common Law Bad Faith

"Inherent in every insurance contract is the obligation of each party to deal fairly and in good faith." *Weese v. Nationwide Ins. Co.*, 879 F.2d 115 (4th Cir. 1989). "Absent a contractual obligation to pay a claim, no bad faith cause of action exists, either at common law or by statute." *Hawkins v. Ford Motor Co.*, 211 W.Va. 487, 492, 566 S.E.2d 624, 629

(2002) (citation omitted). Defendant contends that given it had no authority or ability to alter BRIM's ultimate decision with regards to plaintiff's mine subsidence claim, it did not breach its contract and therefore cannot have engaged in bad faith. *See* [Doc. 102 at 19]. In his Response, plaintiff argues that a cause of action for bad faith in the context of insurance disputes exists independent of his claims for breach of contract. *See* [Doc. 104 at 13]. This Court disagrees.

In *Slampak v. Nationwide Insurance Company of America*, 2019 WL 3304814 (N.D. W.Va. July 23, 2019) (Stamp, J.), this Court noted:

> Under West Virginia law, breaches of implied covenants do "not provide a
> cause of action apart from a breach of contract claim." *Gaddy Eng'g Co. v.
> Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 578 (W.Va.
> 2013) (internal quotation marks omitted). Rather, such claims "sound[ ] in
> breach of contract." *Id.* (internal quotation marks omitted). West Virginia law
> recognizes that "'in every contract there exists an implied covenant of good faith
> and fair dealing.'" *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*,
> 278 F.3d 401, 409 (4th Cir. 2002) (quoting *Harless v. First National Bank in
> Fairmont*, 246 S.E.2d 270, 274 (W.Va. 1978)). West Virginia law does not,
> however, recognize an independent cause of action for the breach of an implied
> covenant of good faith and fair dealing separate and apart from a breach of
> contract claim. *Stand Energy Corp. v. Columbia Gas Transmission Corp.*,
> 373 F. Supp. 2d 631, 644 (S.D. W.Va. 2005); *see also Warden v. PHH*

>  *Mortg. Corp.*, No. 3:10-cv-75, 2010 WL 3720128, at *5 (N.D. W. Va. Sept. 16,
>
>  2010) (Bailey).

*Slampak*, 2019 WL 3304814, at *5.  In consideration of the foregoing body of law and having

found no breach of contract, defendant is entitled to summary judgment with respect to

plaintiff's common law bad faith claim.

## III.   Unfair Trade Practices Act

Plaintiff's claims against defendant for violations of the West Virginia Unfair Trade

Practices Act arise pursuant to *Jenkins v. J.C. Penney Casualty Insurance Company*,

167 W.Va. 597, 280 S.E.2d 252 (1981).  Therein, the *Jenkins* Court identified the essential

elements of the action, holding:

>  [I]t does seem clear that more than a single isolated violation of W.Va. Code
>
>  33-11-4(9), must be shown in order to meet the statutory requirement of an
>
>  indication of "a general business practice," which requirement must be shown
>
>  in order to maintain the statutory implied cause of action.

*Id.* at 260.  Therefore, plaintiff must demonstrate that the alleged misconduct by defendant

took place with sufficient frequency as to indicate a general business practice.  *Id.*

Here, plaintiff has failed to do so.  Instead, the record indicates that defendant

conducted its own investigation concerning plaintiff's insurance claim [Doc. 101-1] and did not

compel plaintiff to file suit since both plaintiff and defendant were waiting for BRIM's decision

with respect to the mine subsidence claim [Doc. 101-3].  In this regard, plaintiff appears to be

challenging BRIM's denial of the mine subsidence claim seeking damages from defendant.

However, as previously stated, the plain language of W.Va. Code §33-30-8 vests the

14

exclusive authority to affirm or deny mine subsidence claims with BRIM, rather than defendant. Still, the evidence indicates that defendant received monthly updates from BRIM regarding the status of BRIM's investigation. *See* [Doc. 101-3]. Given these circumstances, this Court cannot agree with plaintiff's assertion that defendant failed to undertake any investigation into whether the alleged property damaged should have been covered under the mine subsidence endorsement. Having found no misconduct committed with sufficient frequency as to indicate defendant's general business practice, defendant is entitled to summary judgment with respect to plaintiff's Unfair Trade Practices claim.

## IV.    Punitive Damages

Concerning punitive damages for alleged bad faith, the Supreme Court of Appeals of West Virginia has stated:

> [P]unitive damages for failure to settle a property dispute shall not be awarded against an insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process. By "actual malice" we mean that the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim.

*Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 330, 352 S.E.2d 73, 80 (1986). Similarly, in *McCormick v. Allstate Ins. Co.*, 202 W.Va. 535, 505 S.E.2d 454 (1998), the Court informed:

> We see no reason why this Court should abandon the "actual malice" standard, with its focus on the insurer's treatment of the policyholder, where, as in the

case sub judice, a first-party claim is asserted under the Unfair Claim Settlement Practices Act.

*Id.* at 459.  Thus, a showing of actual malice is necessary to recover punitive damages under both types of claims.  Having already found that defendant acted properly in its referral of the underlying insurance claim to BRIM, defendant is entitled to summary judgment with respect to plaintiff's claim for punitive damages.

## CONCLUSION

For the reasons contained herein, defendant Westfield Insurance Company's Renewed Motion for Summary Judgment **[Doc. 103]** is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE**.  The Clerk is directed to enter judgment in favor of defendant and **STRIKE** this matter from the active docket of the Court.

To the extent that defendant's exhibits in support of its Motion appear to have been docketed as a duplicate Motion for Summary Judgment, **[Doc. 101]** is **GRANTED**.

Defendant's Motion to Stay **[Doc. 106]** is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED:** January 29, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

16